IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINQUE HAGANS,<br><br>     Plaintiff,<br><br> v.<br><br>CORRECTIONAL OFFICER T. KOSHY, et al.,<br><br>     Defendant. | CIVIL ACTION<br>NO. 24-2910 |

**OPINION**

**Slomsky, J.**                                                                                                **November 14, 2025**

**I.    INTRODUCTION**

 Dominque Hagans ("Plaintiff") brings this action under 42 U.S.C. § 1983 against Dr. Appiah-Forson, among others. At the time of the events giving rise to her claims, Plaintiff was housed at Riverside Correctional Facility ("RCF") located in Philadelphia, Pennsylvania, as a pretrial detainee. Plaintiff alleges that while she was at RCF that Defendant Dr. Appiah-Forson ("Dr. Appiah-Forson"), acting in his individual capacity, violated her Eighth and Fourteenth Amendment rights by failing to provide her with adequate medical care. Plaintiff also asserts a supervisor liability claim against Dr. Appiah-Forson, since he apparently had a supervisory position as a dentist at RCF. Currently before the Court is Dr. Appiah-Forson's Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim.

 For the following reasons, Dr. Appiah-Forson's Motion to Dismiss the Amended Complaint will be granted.

1

## II.     FACTUAL BACKGROUND

On May 30, 2022, Plaintiff was arrested and charged with various offenses in Philadelphia, Pennsylvania. (Doc. No. 22 at ¶ 25.)[1] Because Plaintiff was unable to make bail, she was held as a pretrial detainee in Riverside Correctional Facility ("RCF"), a facility within the Philadelphia Department of Prisons. (Id. at ¶¶ 26-27.)

On July 2, 2022, Plaintiff was warned by an inmate at RCF that other inmates planned to attack her when she returned to her cell. (Id. at ¶ 28.) Plaintiff immediately reported the planned attack to Defendant Supervisory Officer Jane Doe 1 who replied, "What do you want me to do, it's about to be count[2]." (Id. at ¶¶ 29, 31). Defendant Supervisory Officer Jane Doe 1 took no further action regarding Plaintiff's report. (Id. at ¶ 32.) Upon returning to her cell, Plaintiff was assaulted by approximately eight (8) other inmates, causing Plaintiff's two (2) top-front teeth to be knocked out. (Id. at ¶¶ 33-36.) The assault lasted approximately seven (7) minutes before Defendants Supervisory Officers John and Jane Does 1 to 4, Correctional Officers Doe 1 and 2, and Correctional Officer T. Koshy intervened. (Id. at ¶ 37–39.)

That same day, Defendant Koshy prepared an "Inmate Injury Report" documenting the incident, including that Plaintiff "lost two front teeth on upper jaw." (Id. at ¶ 40.) Immediately following the assault, Plaintiff asked Defendant Supervisory Officer Jane Doe 2 to be taken to the hospital to have her teeth put back in. (Id. at ¶ 41.) Defendant Supervisory Officer Jane Doe 2 responded that Plaintiff would not get "special treatment" and, along with Defendant Koshy,

---

[1] The Amended Complaint is the operative Complaint in this case.

[2] "Count" is "[a] time when prisoners are expected to be at their assigned bunk or cell" so that "they can be counted by the unit officer." Prison Terms Glossary, Serendipity Creative LLC, https://morethanourcrimes.org/learn-and-explore/prison-terms-glossary/ (last visited Nov. 7, 2025).

sent Plaintiff to the restrictive housing unit as punishment. (Id. at ¶¶ 41–42.) Before being sent to this confinement, Plaintiff was examined by Defendants Mariben Gonzalez, APRN[3], and Khloe Karo, LPN[4], who both failed to address Plaintiff's avulsed teeth[5]. (Id. at ¶ 44.) Plaintiff also submitted a sick call request, asking for her teeth to be replaced, which was not listed for sick call until July 4, 2022. (Id. at ¶¶ 45–46.) On July 3, 2022, Plaintiff submitted another sick call request for her teeth to be fixed and also complained that her brain felt like it was "swollen" and "bleeding." (Id. at ¶ 47.) Despite her requests, Plaintiff was not scheduled for an examination until July 4, 2022. (Id. at ¶ 48.)

On July 4, 2022, Plaintiff was examined by Defendants Dorian Jacobs, RN[6], and Dr. Joseph Kustra, but received no treatment for her avulsed teeth. (Id. at ¶ 49.) On July 5, 2022, Plaintiff was seen by Dr. Appiah-Forson, the Defendant who filed the instant Motion to Dismiss and who is a prison dental provider. Dr. Appiah-Forson found that it was far too late for Plaintiff's teeth to be replaced because her gums had started to close around the sockets of the missing teeth. (Id. at ¶ 50.)

---

[3] The parties have not defined the acronym "APRN." It apparently stands for Advanced Practice Registered Nurse. *Advance Practice Registered Nurse*, American Nurses Association, https://www.nursingworld.org/practice-policy/workforce/what-is-nursing/aprn/ (last visited Nov. 13, 2025).

[4] The parties have not defined the acronym "LPN." It apparently stands for Licensed Practical Nurse. *Licensed Practical Nurse*, Cleveland Clinic, https://my.clevelandclinic.org/health/articles/24503-licensed-practical-nurse-lpn (last visited Nov. 13, 2025).

[5] "Avulsed teeth" are teeth that have been knocked out their socket. "Avulsed teeth are a type of dental trauma and require immediate treatment." *Avulsed Tooth*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/21579-avulsed-tooth (last visited Nov. 7, 2025).

[6] The parties have not defined the acronym "RN." It apparently stands for Registered Nurse. *Registered Nurse*, Cleveland Clinic, https://my.clevelandclinic.org/health/articles/registered-nurse-rn (last visited Nov. 13, 2025).

**A.     Procedural Background**

Plaintiff filed an Amended Complaint on June 23, 2025. (Doc. No. 22.) The Amended Complaint asserts two claims under § 1983 against Defendant Dr. Appiah-Forson: (1) Denial of Adequate Medical Care under the Fourteenth Amendment (Count III); and (2) Supervisor Liability (Count IV). On July 11, 2025, individual Defendant Dr. Appiah-Forson filed a Motion to Dismiss the Amended Complaint. (Doc. No. 25.) On July 24, 2025, Plaintiff filed a Response in Opposition. (Doc. No. 26.) On November 7, 2025, a hearing was held on the Motion. (Id.) The Motion to Dismiss the Amended Complaint is now ripe for disposition.

**III.    STANDARD OF REVIEW**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). A complaint must do more than allege a plaintiff's entitlement to relief; it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.   ANALYSIS

Dr. Appiah-Forson moves to dismiss the claims against him (Counts III and IV) in Plaintiff's Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (See generally Doc. No. 25-1). Each claim will be discussed in turn.

### A.  Denial of Adequate Medical Care (Count III)

A claim for inadequate medical care of a pre-trial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment. Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). In the Third Circuit, pre-trial detainees alleging inadequate medical care are entitled to at least as much protection as is provided under the Eighth Amendment "cruel and unusual punishment" standard articulated in Estelle v. Gamble, 429 U.S. 97, 97 (1976). "In order to

establish a violation of [a plaintiff's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

The Natale two-pronged test does not attempt to second-guess the adequacy of a particular course of treatment, and deference is given to prison medical professionals in the diagnosis and treatment of patients. See Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (plaintiff's disagreement with the course and method of treatment is not sufficient to establish a constitutional claim). However, if an inmate is prevented from receiving recommended treatment, or is denied access to a physician capable of evaluating the need for treatment, the constitutional standard of Estelle may be violated. Id. (citing West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978)).

To satisfy the deliberate indifference prong of Natale, it must be shown that a prison official (1) "knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Rouse, 182 F.3d at 197. But "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." Estelle, 429 U.S. at 106. Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Gibbons v. Montgomery Cty., 2016 U.S.

Dist. LEXIS 92793, at *14 (E.D. Pa. July 18, 2016) (citing <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, at *8 (E.D. Pa. Oct. 13, 2000)).

Here, reading the Amended Complaint in the light most favorable to Plaintiff, there is no allegation that Dr. Appiah-Forson was deliberately indifferent to her dental needs. Although Plaintiff has alleged a serious medical condition regarding her avulsed teeth, she has not plausibly alleged deliberate indifference because she has failed to show that Dr. Appiah-Forson ever refused to see her at any time following the assault, delayed medical attention for a non-medical reason, or prevented Plaintiff from receiving needed or recommended treatment. The factual allegations directed to Dr. Appiah-Forson state that it was not until July 5, 2022, after two sick call requests, that she was examined by him. This is the first time that it is alleged in the Amended Complaint that Dr. Appiah-Forson was made aware of Plaintiff's condition. Plaintiff was examined on two prior occasions before Dr. Appiah-Forson attempted to treat her medical condition. When he did see her, he made the dental diagnosis that it was far too late for her teeth to be replaced because her gums had started to close around the sockets of her missing teeth. As such, the allegations against him amount to, at best, "potential errors in medical judgment, malpractice, and/or disagreement concerning his overall dental treatment," not deliberate indifference. (Doc. No. 25-1 at 5–6.)

Accordingly, Dr. Appiah-Forson's Motion to Dismiss will be granted on the Fourteenth Amendment inadequate medical care claim asserted against him in Count III of the Amended Complaint.

### B. Supervisor Liability (Count IV)

To establish that supervisors are liable under § 1983 for deliberate indifference to an unconstitutional policy or practice, "[t]he plaintiff must (1) identify the specific supervisory

7

practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the supervisor's failure to employ that supervisory practice or procedure.  Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Because Plaintiff's Amended Complaint does not plausibly allege a claim of inadequate medical care against Dr. Appiah-Forson arising from deliberate indifference, as explained supra, it cannot plausibly state a claim for Supervisor Liability.  The allegations set forth in Claim IV of the Amended Complaint against Dr. Appiah Forson merely state in conclusory fashion that Plaintiff was denied adequate medical care, and that Dr. Appiah-Forson was aware of and acquiesced in such denial.  (Doc. No. 22 at ¶¶ 86–87.)  But there are no plausible facts set forth to support this conclusion other than the ones noted above that show no deliberate indifference. And the Third Circuit has emphasized that this sort of conclusory allegation is insufficient to establish a supervisor liability claim.  See Brown, 269 F.3d at 216 ("[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did") (citing Sample, 885 F.2d at 1118).

Accordingly, Defendant Appiah-Forson's Motion to Dismiss will be granted as to the Supervisor Liability claim asserted against him in Count IV of the Amended Complaint.

## V.   CONCLUSION

For the foregoing reasons, Defendant Appiah-Forson's Motion to Dismiss (Doc. No. 25) will be granted.  An appropriate Order follows.